IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
APR 25 2018
U.S. COURT OF
FEDERAL CLAIMS

JOSEPH REAVES,

Plaintiff, :

Vs. : Case No. 16-141C

: Judge Victor Wolski

THE UNITED STATES AMERICA :

Defendants. :

MEMORANDUM in Support of Motion for Court to Grant Sanction of deliberate spoliation of evidence.

i

TABLE OF CONTENTS

PAGES

Table of Authories........................................................ III
Appendix (Exhibits)........................................................ II
Statement Question Presented........................................................5
RCFC........................................................6
State of the Case........................................................6
A. Producedural History........................................................6
B. Facts........................................................7-

Statement of Arguments........................................................8-11

ConClusion........................................................12



Received - USCFC

APR 25 2018

## APPENDIX (EXHIBITS) :

1. A , Board of Correction Administrative Record confirmation 00001-000623
2. B, Defendant Attorney Echols sent Plaintiff copies of Administrative Record (CD-ROM); paper
3. C, 10 U.S. C. A 1142, Preseparation counseling; transmittal of medical records to DVA
4. D , Army Regulation, 635-40 (1975) Chapter 4,
5. E , Army Regulation, 635-40 (1975) Chapter 6,
6. F, Army Regulation, 635-40 (1975) Appendix C, Counseling, VA and Social Security benefits, AR 608-13
7. G , Army Regulation, 635-40 (1975) Appendix E, PEB



## TABLE OF AUTHORITIES

PAGES

United States Code

18 U.S.C. § 2701 ......9

Rule Court Federal Claims

7.2 ......6,8

37 ......6,9

52.1 ......

55 ......8

FRCP 56 ......

Army Regulations

25-400-2 ......9,11

40-66 ......9

40-501 ......12

635-40 ......12.

Cases

*Addington v. Texas, 441 U. S. 418, 423-24, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)..... .9*

*Chambers v. NASCO, Inc., 501 U. S. 32, 43-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991.10*

*Legal Standard-Celotex Corp. V. Catrett, 477 U.S. 317, 322-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)....................................................................................................11*

*Larson v. Domestic & Foreign Commerce Corp., 337 U. S. 682, 700-01, 69 S.Ct. 1457, 93 L. Ed. 1628 (1949)...............................................................................................10*

*Portmouth Harbor Land & Hotel Co. V. U.S., 260 U. S. 327, 330, 43 S. Ct. 135, 67 L. Ed. 287 (1922)...................................................................................................10*

*1 Sir T. Willes Chitty, et al., Smith's Leading Cases 404 (13th ed. 1929)..........................10*

*Anderson v. Beatrice Foods Co., 900 F.2d 388, 395 (1st Cir. 1990) ..............................11*

*Byrnie v. Town of Cromwell, 243 F. 3d 93, 107-12 (2d Cir. 2001)................................8*

*Condrey v. SunTrust Bank of Ga.*.431 F.3d 191, 203, (5th Cir. 2005............................10

*Eaton Corp. v. Appliance Vluves Corp. , 790 F.2d 874 (Fed. Cir. 1986);.........................9*

*Fowler v. Califano,* 596 F. 2d 600, 604 (3rd Cir. 1979).................................................11

*Green Management Corp. v. U.S., 42 Fed. Cl. 411, 439 (1998)*

*Higgins v. Martin Marietta Corp., 752 F.2d 492 (10th Cir. 1985)..................................11*

*King v. Ill. Cent. R. R. , 337 F.3d 550, 556, (5th Cir. 2003)...........................................10*

*Kronisch v. U.S., 150 F.3d 112, 126 (2nd Cir (1998)....................................................10*

*Jandreau v. Nicholson, 492 F.3d 1372, 1375 (Fed. Cir. 2007)........................................9.*

*Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2nd Cir. 2002....9*

*Russell v. University of Tex. Of the Permian Basin, 234 Fed. Appx. 195, 207 (5th Cir. 2007)...........................................................................................................11*

*Sassower v. Field, 973 F. 2d 75, 80-81 (2nd Cir. 1992);*

*Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76 (3rd Cir. 1994)*

*Silvestri v.Gen. Motors Corp..271 F. 3d 583, 593-4 (4th Cir. 2001................................11*

*Swift Transp. Co. Of Arizona, LLC v. Angulo, 716 F. 3d 1127 (8th Cir. 2013).................10*

*United States v. Wise, 221 F. 3d 140, 156 (5th Cir. 2000)*

*Update Art , Inc. V. Modiin Pub., Ltd., 843 F. 2d 67, 71 (2nd Cir. 1988)*

*Vick v. Tex. Employment Comm'n, 514 F.2d at 73*

*West . Goodyear Tire & Rubber Co. 167 F.3d 776 , 779 (2d Cir. 1999).*

*Whitt v. Stephens County, 529 F 3d 278, 284 (5th Cir.);...................................................10*

Federal Court Claims

*Laboratory Corp. of America v. U.S., 108 Fed. Cl. 549 (2012);* .....................................19

*United Medical Supply Co., Inc. V. U.S., 77 Fed. Cl. 257 (2007)*................................9-10

*Rimkus v. Cammarata*, 688 F. Supp. 2d 598 (2010)
*K-Con Bldg. Sys., 2012 WL 3744672 at * 10, 106 Fed. Cl. 652* ..................9
*Vick v. Tex. Employment Comm'n, 514 F.2d at 737* ................................10

## STATEMENT QUESTION PRESENTED

1. Whether Soldier Reaves returned PRP HREC's to the TMC in late May 1983
2. Whether an unauthorized person checked out PRP HREC's from highly secured TMC
3. Whether an authorized person check out segregated PRP HREC's from highly secured TMC.
4. Whether the Army regulations emphasize that this Medical Evidence is used for the Army Disability Evaluation System (APDES) ; Veterans Affairs and Social Security Administration benefits and future claims of disability in litigation.
5. Whether the Defendant failed to respond and reply to Discovery Orders by the Court.
6. Whether the Federal Court of Claims Judge has authority to Grant Sanction for Deliberate or bad faith action of spoliation of evidence
7. Whether the willful and unlawful destruction, damage, removal, or alienation of Federal records is a fine, 3 years in prison, or both .
8. Whether the deliberate destruction of two years of disability evidence prejudice the Plaintiff of the APDES, benefits from 1983-1986 and 1983 until the present.

RULES OF THE COURT FEDERAL CLAIMS

RCFC 37. :

1. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions

RCFC 7.2 MOTIONS :

1. 7.2 Time for Filing
2. 7.2 (a) In General
3. 7.2 (a)(1) Responses and Objections. Unless otherwise provided in these rule or by order of the court, a response or an objection to a written motion must be filed within 14 days after service of the motion.
4. 7.2 (a)(2) Replies. A reply to a response or an objection may be filed within 7 days after service of the response or objection.

STATEMENT OF THE CASE :

I

PROCEDURAL HISTORY :

COURT HEARING TRANSCRIPT MARCH 1, 2017 ISSUE RAISED BEFORE COURT :

1. MR. REAVES : (P 22 :20-25);(P 23 :1) MEDICAL RECORDS DESTROYED-Because they knew that my case was supposed to defer to a medical evaluation board, SF 600.
2. THE COURT : (P 26 :3-7) When were the medical records identified as destroyed? 81'-83', When did you know that they were destroyed?
3. MR. REAVES : (P 26 :8-10) I did not know that they were destroyed until I was in prison. And I tried- I sent away to—
4. THE COURT : (P 26 :11-13) Oh, that's when you applied and they said that they had- that records were missing and then
5. THE COURT : (P 26 :15-17) So that's when you applied to the board the first time and they said that they couldn't process it because your records were checked out, right?
6. MR. REAVES : (P 26 :18) Right. Right.
7. THE COURT : (P 26 :24-25);(P 27 :1-2) So the permanent records were destroyed, but they had temporary they had other records that were backups that could be used or what was the-

8. MR. REAVES : (P 27 :3-4) Yes, Yeah, the temporary records are what you are reviewing right.
9. THE COURT : (P 27 :8-12) So, the permanent record would have been sent to a file but the temporary record might have been the basis for that, and it might have been in some-at the medical facilities instead or something right?
10. MR. REAVES : (P 27 :13) Right.
11. THE COURT : (P 27 : 14) OKAY
12. MR. REAVES : (P 27 : 15-21) Right. Right. But, also, you're talking about me seeing Dr. Thomas one month after I visited him and I had mentioned about the different anxiety and things that I felt then. That's in those permanent records that were destroyed, as well as the rash that I –a complaint about, which is considered to be hives, and so-and other stomach complaints.

## II

## FACTS :

### A

### ARMY MILITARY RECORD STANDARD FORM 600 (EXHIBIT G-4):

1. 9 NOVEMBER 1983, In May 1983 the Medical Record of this SM was found check out from the T.M.C. and records here indicate it was never returned. The torn and destroyed cover was found in downtown Ausgburg. The SM deniefs any knowledge of how his medical records were lost and destroyed. HE STATES HE RETURNED THEM TO THE T.M.C. LATE IN MAY 1983.

### B

### VETERANS AFFAIRS RATING DECISION INDICATE DATES OF DESTROYED RECORDS :

1. OCTOBER 6, 1981 – NOVEMBER 7, 1983 (AR 000022-23))

### C

### REQUEST OF MILITARY RECORDS BY VETERANS AFFAIRS AND PLAINTIFF BASED ON ADMINISTRATIVE RECORD :

1. DEPARTMENT OF VETERANS AFFAIRS, NATIONAL ARCHIVES AND RECORD ADMINISTRATION (AR 27-000526-532
2. STANDARD FORM 180, PLAINTIFF, (AR 27-000534-569

## STATEMENT OF THE ARGUMENT

1. Plaintiff contends that the : (1) Defendant's having control over the PRP HREC's had an obligation to preserve the material evidence at the time they were destroyed; (2) that the records were destroyed « with a culpable state of mind » (prevent Soldier or Plaintiff from the APDES or disability retirment; and (3) that the destroyed evidence was « relevant » to the party's (plaintiff) claims : Army Retirement system, Veterans Affairs and Social Security disability benefits or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Byrnie v. Town of Cromwell, 243 F. 3d 93, 107-12 (2d Cir. 2001)*
2. The Defendants under RCFC 7.2 Time for Filing, (a) (1) Responses and Objections. A response or an objection to a written motion must be filed within 14 days after service of the motion; and (a)(2) Replies, a reply to a response or an objection may be filed within 7 days after service of the response or objection.
3. Failure to otherwise defend their case under RCFC 55. (a)
4. On December 5, 2017, Plaintiff submitted Motion to Supplement the Administrative Record with Destruction of PRP HREC's claim. Defendant's failed to respond to this claim and motion on such date under applicable RCFC 7.2 (a)(1) and (a)(2).
5. Motion that response and replied dates have expired. Defendants have not responded to Motions submitted by Plaintiff, specifically argument concerning the deliberate spoliation. Therefore, such evidence is undisputed or unopposed.
6. The evidence below with the Applicable regulations illustrated that Plaintiff returned PRP HREC's in late May 1983. Someone with authorization to checkout these PRP HREC's extracted them from highly secured facility. The Plaintiff is excluded and that inference can be made by the statement in the SF 600, 9 November 1983. This only leave the fact that these records were destroyed and part of it was found in downtown Augsburg, Germany. Two years of PRP HREC's were destroyed based on Veterans Affairs calculation.. Next, The Army has a Disability system for Retirement (AR 40-66 and 40-501) that evidence in these Medical records are stored and used for Disability processing in the Army, Veterans Affairs and Social Security benefits base on the regulations . They have a medical retention policy in which it houses, transfer and send these records to the appropriate agency's or MTF,MEB, PEB, and VA. Under Army regulation 25-400-2, the act of unauthorized removal, damage or destruction of HREC's is a criminal offense, 3 years in prison under 18 USC . § 2701). The Plaintiff brought the destruction of PRP HREC's to the Court's attention during Oral Argument,

March 1, 2017 and that it was done deliberately because his case warranted MEB referral. The Department of Veterans Affairs requested all his Military records several times and determined that the destroyed records are destroyed. (AR )The Plaintiff requested the Military Records, also. Finally, the Army has a elobarate system of housing disability medical evidence to be used for APDES, VA, and Social Security based on Army Regulations. (EXHIBIT )

7. Based on Federal Rules of Civil Procedure and RCFC 37 (a)(1) ; (a)(3) it is unnecessary for the Court to Compel the Defendant's to Discovery, order a hearing on discovery issues, compel compliance discovery order, order status conference, for Defendant's to explain itself, concerning the two years of destroyed PRP HREC's because the statement on the SF 600 infers that they are completely destroyed and gone. They are not in the Administrative Records, Veterans Affairs Requested them and the Plaintiff requested them as well. (*See, United Medical Supply Co., Inc. V. U.S., 77 Fed. Cl. 257 (2007)*
8. Under RCFC 37 (2)(a) (i)-thru-(vi) the Court can GRANT Sanction Concerning Parties.
9. Under RCFC 37 (2)(vi) rendering a default Judgment against the disobedient party.
10. Under RCFC 37 (b)(2) the Court may impose a variety of sanction, order default judgment.
11. Under RCFC 37 (b) Sanctions are still appropriate under this rule if a party maye have destroyed evidence prior to issuance of the discovery order and thus be unable to obey, sanctions are still appropriate because this inability was self-inflicted. *Turner v. Hudson Transit Lines, Inc., 142 F.R. D. 68, 72 (S.D.N. Y. 1991); see also, In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979, 90 F. R. D. 613, 620-21 (N. D. ILL 1981)*
12. Under RCFC 37 and all, the Court can GRANT sacntion for bad faith by Defendant.
13. Plaintiff rely upon the following cases in which the Court can Grant Sanction for deliberate spoliation or bad faith act :
    (a) *Laboratory Corp. of America v. U.S., 108 Fed. Cl. 549 (2012); Jandreau v. Nicholson, 492 F.3d 1372, 1375 (Fed. Cir. 2007); see also K-Con Bldg. Sys., 2012 WL 3744672 at * 10, 106 Fed. Cl. 652.; Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2nd Cir. 2002); Eaton Corp. v. Appliance Vluves Corp. , 790 F.2d 874 (Fed. Cir. 1986); Addington v. Texas, 441 U. S. 418, 423-24, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)(Clear and convincing standards of evidence necessary to overcome presumption that government of good faith); Green Management Corp. v. U.S., 42 Fed. Cl. 411, 439 (1998)(The presumption may be reversed only with « -irrefragable proof » of animus, or specific intent to injure, the plaintiff)*
14. Spoliation Sanction warranted :
    1. *United Medical Supply Co., Inc. V. U.S., 77 Fed. Cl. 257 (2007)(All individuals involved in these activities were employees of the United States and , in various regards,*

*committed malfeasance); Larson v. Domestic & Foreign Commerce Corp., 337 U. S. 682, 700-01, 69 S.Ct. 1457, 93 L. Ed. 1628 (1949); Portmouth Harbor Land & Hotel Co. V. U.S., 260 U. S. 327, 330, 43 S. Ct. 135, 67 L. Ed. 287 (1922)(The United States cannot avoid the ramifications that flow from the conduct of its offiicials and employees, acting within their official capacities-it acts 'through those individuals and, at least in this circumstance, is vicarioulsy responsible for their conduct); Chambers v. NASCO, Inc., 501 U. S. 32, 43-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); Sassower v. Field, 973 F. 2d 75, 80-81 (2nd Cir. 1992); see also, P.L. McGlynn, Note Spoliation in the Product Liability Context, 27 U. Mem L. Rev. 663 (1997) (Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation.); 1 Sir T. Willes Chitty, et al., Smith's Leading Cases 404 (13th ed. 1929) : see Kronisch v. U.S., 150 F.3d 112, 126 (2nd Cir (1998)(It has long been the rule that spoliators should not benefit from their wrongdoing, as illustrated by « that favorite maximum of the law, omnia presumuntur contra spoliatorem »); Update Art , Inc. V. Modiin Pub., Ltd., 843 F. 2d 67, 71 (2nd Cir. 1988)(The sanction should be designed to : (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore « the prejudice party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party);Swift Transp. Co. Of Arizona, LLC v. Angulo, 716 F. 3d 1127 (8th Cir. 2013)(Intentionally destroy evidence) Rimkus v. Cammarata,* 688 F. Supp. 2d 598 (2010) Spoliation)

2. *Condrey v. SunTrust Bank of Ga..*431 F.3d 191, 203, (5th Cir. 2005); *King v. Ill. Cent. R. R. , 337 F.3d 550, 556, (5th Cir. 2003); United States v. Wise, 221 F. 3d 140, 156 (5th Cir. 2000)*(adverse inference may not be imposed unless there is evidence of « bad faith »)
3. *King, 337 F.3d at 556 (King* must show that ICR acted in « bad faith » to establish that it was entitled to an adverse inference.) *Vick v. Tex. Employment Comm'n, 514 F.2d at 737 (The adverse inference to be drawn from destruction of records is predicted on bad conduct of the defendant.*
4. *Whitt v. Stephens County, 529 F 3d 278, 284 (5th Cir.); Condrey, at 191, 203.( Any jury {Judge} may draw an adverse inference 'that a party who' intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party ». (quoting Russell v. University of Tex. Of the Permian Basin, 234 Fed. Appx. 195, 207 (5th Cir. 2007)*
5. *Silvestri v.Gen. Motors Corp..271 F. 3d 583, 593-4 (4th Cir. 2001)(The sanction judgment is appropriate only if the spoliation or destruction of evidence resulted in « irreparable prejudice » and no lesser sanction would suffice.*

6. *Legal Standard-Celotex Corp. V. Catrett, 477 U.S. 317, 322-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*
7. *Anderson v. Beatrice Foods Co., 900 F.2d 388, 395 (1st Cir. 1990)( A measure of the appropriateness of a sanction is whether it 'restore[s] the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party » (West . Goodyear Tire & Rubber Co. 167 F.3d 776 , 779 (2d Cir. 1999).*
8. *The* 'relevance' and 'prejudice' factors of the adverse inference analysis are often broken down into three subparts : (1) whether the evidence is relevant to the lawsuit; (2) whether the evidence would have supported the inference sought; and (3) whether the nondestroying party has suffered prejudice from the destruction of the evidence
9. *Higgins v. Martin Marietta Corp., 752 F.2d 492 (10th Cir. 1985)*
10. *Pennsylvania, Manson v. Southeastern Transp. Auth., 767 A. 2d 1, 5 (Pa. 2001); Eichman v. McKeon, 824 A.2d 305, 312-314 (Pa. Super. Ct. 2003); Schroeder v. Commonwealth Dep't of Transp., 710 A.2d 23 (Pa. 1998)(adopting the test from Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76 (3rd Cir. 1994)*
11. *Fowler v. Califano*, 596 F. 2d 600, 604 (3rd Cir. 1979) (remanding social security claim where record of appellant's prior claim, through no fault of her own, had been lost and appellant provided evidence to reconstruct the record; the court was « inclined to agree » that it is « UNCONSCIONABLE FOR THE ADMINISTRATION {AGENCY/GOVERNMENT] TO TAKE A POSITION THAT IN EFFET PERMITS IT TO PROFIT BY ITS OWN ERRORS »
12. A Strong and concrete inference is drawn from SF 600, 9 November 1983 "Record Destroyed" in which the Plaintiff was unaware and affirmatively stated that he returned the PRP HREC's in late May 1983. Only a person with authorization could check-out these segregated and highly secured PRP HREC's according to Army Regulation 25-400-2. It had to be an Army personnel. The records did not get up and walk out and finally the cover of the records was found in downtown Augsburg, Germany.
13. The Defendant's don't have the destroyed records in the Administrative Record, (SEE: EXHIBIT A & B); The Defendant have a retention policy of housing these records that are used for disability issues in Army regulation 635-40: (APDES) army retirement( SEE: EXHIBIT D & G); Veterans Affairs (SEE: EXHIBIT C & F) and Social Security Administrative (SEE: EXHIBIT F) or live AR 40-501 mandates, Chapter 10, future disability claims which means litigation.
14. The Court can GRANT Sanction based on the RCFC and above mentioned cases.

**CONCLUSION : RELIEF Sought**

Plaintiff Request that this Honorable Court GRANT SANCTION for the Deliberate spoliation of two years of PRP HREC's that was evidence toward Disability benefits for the Army, Veteranss Affairs and Social Security Administration as stated in AR 645-40 and 40-501.

Please send a message with your judgment that the Spoliator will not benefit from his criminal actions in this case;

Plaintiff Request the Punitive damages of : $2, 000,000.00 and any additional remedy the Court see fit. The Government is still responsible for its employees bada cts.

Respectfully Submitted,

Plaintiff/Joseph Reaves

DATED: APRIL 22, 2018

# EXHIBIT

# A



# U[redacted] States of America

## [redacted]ARTMENT OF THE ARMY

Washington, DC — PLACE
16 May 2016 — DATE

I HEREBY CERTIFY that the [redacted] tute true and accurate copies of files pertaining to Joseph D. Reaves a former member of the United [redacted] Copies of records from the Army Review Board Agency (ARBA), and Army Board for Correction of Milit[redacted] BCMR) are maintained in Arlington, Virginia. A copy of the Official Military Personnel File (OMPF) is m[redacted] National Personnel Records Center, St. Louis, Missouri. The original personnel records and copies of other [redacted] he official temporary custody of the Military Personnel Litigation Branch, Litigation Division, Office of the Jud[redacted] eneral of the Army.

DANIEL J. EVERETT
Lieutenant Colonel, U.S. Army
Chief, Military Personnel Litigation Branch

[redacted] ministrative Record Part 2 - Pages 000341 - 000623

I HEREBY CER[redacted] enant Colonel Daniel J Everett, who signed the foregoing certificate, is the Chief, Military Person[redacted] ranch, Litigation Division, Office of the Judge Advocate General of the Army, and that full faith and credit [redacted] n to his certification.

IN TESTIMONY WHEREOF I, Gerald B. O'Keefe
The Administrative Assistant to the Secretary of the Army, have hereunto caused the seal of the Department of the Army to be affixed this 16th day of May, 2016

By _______________ Administrative Assistant.

**PAUL T. SALUSSOLIA**
**Colonel, U.S. Army**
**Chief, Litigation Division**

DA FO[redacted] 98 EDITION OF 1 MAR 66 IS OBSOLETE APD PE v1.10

# EXHIBIT

B



**U.S. Department of Justice**

Civil Division

REK:DEK:AJEchols
DJ# 154-16-141

Telephone: (202) 616-0463
Facsimile: (202) 307-2503

*Washington, DC 20530*

May 31, 2016

VIA U.S. FIRST-CLASS MAIL

Mr. Joseph Reaves
P.O. Box 30769
Philadelphia, PA 19104

Re: *Reaves v. United States*, No. 16-141C (Fed. Cl.)

Dear Mr. Reaves:

Pursuant to Appendix E of the Rules of the Court of Federal Claims and the Court's order dated May 26, 2016 (ECF No. 10), we enclose a CD-ROM containing the administrative record in the above-referenced case and one courtesy paper copy of the same, which was filed on CD-ROM today.

Sincerely,

Alexis J. Echols
Trial Attorney
Commercial Litigation Branch

Enclosure

# EXHIBIT

# C

KeyCite Red Flag - Severe Negative Treatment
Enacted LegislationAmended by PL 115-91, December 12, 2017, 131 Stat 1283,

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

United States Code Annotated
Title 10. Armed Forces (Refs & Annos)
Subtitle A. General Military Law (Refs & Annos)
Part II. Personnel (Refs & Annos)
Chapter 58. Benefits and Services for Members Being Separated or Recently Separated

10 U.S.C.A. § 1142

§ 1142. Preseparation counseling; transmittal of medical records to Department of Veterans Affairs

Effective: December 23, 2016
Currentness

**(a) Requirement.--(1)** Within the time periods specified in paragraph (3), the Secretary concerned shall (except as provided in paragraph (4)) provide for individual preseparation counseling of each member of the armed forces whose discharge or release from active duty is anticipated as of a specific date. A notation of the provision of such counseling with respect to each matter specified in subsection (b), signed by the member, shall be placed in the service record of each member receiving such counseling.

**(2)** In carrying out this section, the Secretary concerned shall use the services available under section 1144 of this title.

**(3)(A)** In the case of an anticipated retirement, preseparation counseling shall commence as soon as possible during the 24-month period preceding the anticipated retirement date. In the case of a separation other than a retirement, preseparation counseling shall commence as soon as possible during the 12-month period preceding the anticipated date. Except as provided in subparagraph (B), in no event shall preseparation counseling commence later than 90 days before the date of discharge or release.

**(B)** In the event that a retirement or other separation is unanticipated until there are 90 or fewer days before the anticipated retirement or separation date, or in the event a member of a reserve component is being demobilized under circumstances in which (as determined by the Secretary concerned) operational requirements make the 90-day requirement under subparagraph (A) unfeasible, preseparation counseling shall begin as soon as possible within the remaining period of service.

**(4)(A)** Subject to subparagraph (B), the Secretary concerned shall not provide preseparation counseling to a member who is being discharged or released before the completion of the first 180 continuous days of active duty of the member.

**(B)** Subparagraph (A) shall not apply in the case of a member who is being retired or separated for disability.

**(C)** For purposes of calculating the days of active duty of a member under subparagraph (A), the Secretary concerned shall exclude any day on which--

(i) the member performed full-time training duty or annual training duty; and

(ii) the member attended, while in the active military service, a school designated as a service school by law or by the Secretary concerned.

**(b) Matters to be covered by counseling.**--Counseling under this section shall include the following:

**(1)** A discussion of the educational assistance benefits to which the member is entitled under the Montgomery GI Bill and other educational assistance programs because of the member's service in the armed forces.

**(2)** A description (to be developed with the assistance of the Secretary of Veterans Affairs) of the compensation and vocational rehabilitation benefits to which the member may be entitled under laws administered by the Secretary of Veterans Affairs, if the member is being medically separated or is being retired under chapter 61 of this title.

**(3)** An explanation of the procedures for and advantages of affiliating with the Selected Reserve.

**(4)** Provision of information on civilian occupations and related assistance programs, including information concerning--

**(A)** certification and licensure requirements that are applicable to civilian occupations;

**(B)** civilian occupations that correspond to military occupational specialties; and

**(C)** government and private-sector programs for job search and job placement assistance, including the public and community service jobs program carried out under section 1143a of this title, and information regarding the placement programs established under sections 1152 and 1153 of this title and the Troops-to-Teachers Program.

**(5)** If the member has a spouse, inclusion of the spouse, at the discretion of the member and the spouse, when counseling regarding the matters covered by paragraphs (9), (10), and (16) is provided, job placement counseling for the spouse, and the provision of information on survivor benefits available under the laws administered by the Secretary of Defense or the Secretary of Veterans Affairs.



**(6)** Information concerning the availability of relocation assistance services and other benefits and services available to persons leaving military service, as provided under section 1144 of this title.

**(7)** Information concerning the availability of medical and dental coverage following separation from active duty, including the opportunity to elect into the conversion health policy provided under section 1145 of this title.

 © 2018 Thomson Reuters. No claim to original U.S. Government Works. 

**(8)** Counseling (for the member and dependents) on the effect of career change on individuals and their families and the availability to the member and dependents of suicide prevention resources following separation from the armed forces.

**(9)** Financial planning assistance, including information on budgeting, saving, credit, loans, and taxes.

**(10)** The creation of a transition plan for the member to attempt to achieve the educational, training, employment, and financial objectives of the member and, if the member has a spouse, the spouse of the member.

**(11)** Information concerning the availability of mental health services and the treatment of post-traumatic stress disorder, anxiety disorders, depression, suicidal ideations, or other mental health conditions associated with service in the armed forces and information concerning the availability of treatment options and resources to address substance abuse, including alcohol, prescription drug, and opioid abuse.

**(12)** Information concerning the priority of service for veterans in the receipt of employment, training, and placement services provided under qualified job training programs of the Department of Labor.

**(13)** Information concerning veterans small business ownership and entrepreneurship programs of the Small Business Administration.

**(14)** Information concerning employment and reemployment rights and obligations under chapter 43 of title 38.

**(15)** Information concerning veterans preference in Federal employment and Federal procurement opportunities.

**(16)** Information on home loan services and housing assistance benefits available under the laws administered by the Secretary of Veterans Affairs and counseling on responsible borrowing practices.

**(17)** A description, developed in consultation with the Secretary of Veterans Affairs, of health care and other benefits to which the member may be entitled under the laws administered by the Secretary of Veterans Affairs, and information regarding the means by which the member can receive additional counseling regarding the member's actual entitlement to such benefits and apply for such benefits.

**(c) Transmittal of medical information to Department of Veterans Affairs.**--In the case of a member being medically separated or being retired under chapter 61 of this title, the Secretary concerned shall ensure (subject to the consent of the member) that a copy of the member's service medical record (including any results of a Physical Evaluation Board) is transmitted to the Secretary of Veterans Affairs within 60 days of the separation or retirement.

**CREDIT(S)**

(Added Pub.L. 101-510, Div. A, Title V, § 502(a)(1), Nov. 5, 1990, 104 Stat. 1552; amended Pub.L. 102-190, Div. A, Title X, § 1061(a)(5), Dec. 5, 1991, 105 Stat. 1472; Pub.L. 102-484, Div. D, Title XLIV, §§ 4401, 4441(b), 4462(b), Oct. 23, 1992, 106 Stat. 2701, 2730, 2740; Pub.L. 103-35, Title II, § 201(i)(1), May 31, 1993, 107 Stat. 100; Pub.L. 103-160,

Div. A, Title XIII, § 1332(c), Nov. 30, 1993, 107 Stat. 1797; Pub.L. 106-398, § 1 [Div. A, Title X, § 1087(a)(9)], Oct. 30, 2000, 114 Stat. 1654, 1654A-290; Pub.L. 107-103, Title III, § 302(a), Dec. 27, 2001, 115 Stat. 991; Pub.L. 109-163, Div. A, Title V, § 594, Jan. 6, 2006, 119 Stat. 3281; Pub.L. 111-84, Div. A, Title X, § 1073(a)(13), Oct. 28, 2009, 123 Stat. 2473; Pub.L. 112-56, Title II, § 221(b), Nov. 21, 2011, 125 Stat. 716; Pub.L. 112-81, Div. A, Title V, §§ 513, 529, 533(c), Dec. 31, 2011, 125 Stat. 1393, 1402, 1404; Pub.L. 112-239, Div. A, Title V, § 541(c), Title X, § 1076(f)(12), Title XVI, § 1699(c)(1), Jan. 2, 2013, 126 Stat. 1735, 1952, 2092; Pub.L. 114-92, Div. A, Title V, § 552, Nov. 25, 2015, 129 Stat. 823; Pub.L. 114-328, Div. A, Title V, § 562, Dec. 23, 2016, 130 Stat. 2138.)

Notes of Decisions (1)

10 U.S.C.A. § 1142, 10 USCA § 1142
Current through P.L. 115-90. Also includes P.L. 115-92 to 115-122. Title 26 current through 115-122.

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT

# D

# CHAPTER 4

# PROCEDURES

## Section I. INITIATION OF MEDICAL EVALUATION

**4-1. Referral by HQDA and Major Commanders.** CG, MILPERCEN, upon recommendation of The Surgeon General, and commanders specified in paragraph 2-17*a*, AR 635-200, upon recommendation of their Staff Surgeon, may refer a member to an appropriate MTF for medical evaluation when there is a question as to the member's ability to perform the duties of his office, grade, rank, or rating because of physical disability.

**4-2. Referral by commanders of MTF's.** Commanders of MTF's who are treating patients in an assigned, attached or outpatient status may initiate action to evaluate a member's physical ability to perform the duties of his office, grade, rank, or rating.

**4-3. Referral by commander.** When a commander believes that a member of his command is unable to perform the duties of his office, grade, rank, or rating because of physical disability, he will refer the member for evaluation to the Commander of the MTF who provides primary medical care to his command. The request for evaluation will be in writing and will state the commander's reasons for believing that the member is unable to perform his duties. The Individual Sick Slip (DD Form 689) may be used for such referral (see AR 600-6). Commanders of Reserve units which are not on active duty will be guided by chapter 8 and AR 140-120 in referring members for evaluation.

## Section II. MEDICAL EVALUATION

**4-4. Medical treatment facility commander.** The MTF commander having primary medical care responsibility will conduct an examination of a member referred to him for evaluation. He will advise the member's commanding officer of the results of the evaluation and proposed disposition. If it appears that the member is not medically qualified to perform duty or that he fails to meet the criteria for retention (chap. 3, AR 40-501), he will be referred to a medical board. MTF commanders will be guided by instructions contained in AR 40-3 and AR 40-501 in making disposition of the member. The MTF commanders will be assisted in the processing of the member's case by the PEBLO in accordance with appendix C.

**4-5. Documentation of disability evaluation cases.** *a.* It is emphasized that the medical report is the heart of the disability evaluation system. Incomplete, inaccurate, misleading, or delayed reports may result in an injustice to the member or to the Government. In describing a member's condition, it is not sufficient that a diagnosed condition may render the individual unfit for further military service. The history of his illness, objective findings on examination, results of x-ray and laboratory tests, reports of consultations, and subjective conclusions with the reasons therefore, are pertinent evidence and are essential for supporting findings and recommendations.

*b.* Apparent contradictions in the records, such as disagreement with a report of consultation, incomplete laboratory reports, faulty x-rays and incomplete studies must be thoroughly explained. The condition of a patient following therapy, his response thereto, the degree of severity of his disease or injury, and when appropriate, their effect on his functional ability must be described in detail to enable the PEB to make a determination of whether the member is physically unfit and to arrive at a proper disability percentage rating if found unfit.

*c.* Examining physicians or medical boards WILL NOT qualify diagnoses by such terms as "fitting," "unfitting," "disqualifying," "ratable," or "not ratable." These are determinations exclusively within the province of adjudicative bodies. Reliance on accepted medical principles and expressions of medical judgment provide guidelines for adjudicating disabilities.

**4–6. Medical boards.** As prescribed in AR 40–3, medical boards are appointed by the commander of a MTF for the purpose of assisting him in the determination of medical fitness, mental competence, mental responsibility and disposition of patients. In the initiation and processing of disability evaluation cases, special liaison and direct communication with other agencies and activities in the disability system is authorized as required.

**4–7. Conduct of medical board proceedings.** *a.* Medical board proceedings of disability cases are conducted in accordance with the provisions of AR 40–3.

*b.* Determination is made of the member's qualification for retention on the basis of criteria set forth in chapter 3, AR 40–501 and this regulation.

*c.* Examining officers and medical board members will use, as a reference, the "VA Physician's Guide—Disability Evaluation Examinations." Recording of defects in accordance with this guide is essential in order to provide adjudicative boards with the information necessary for evaluation of disabilities. For psychiatric cases, in the statement of present condition, there will be a clear description as to how the member's symptoms affect his employability and ability to function. (e.g., Can the member work independently; can he work with minimal supervision; or will he require close supervision? Will his mental impairment cause extensive, occasional, or minimal job instability?) For TDRL cases in which the member has not been able to sustain meaningful employment, a statement should be made as to whether such unemployment is due to the effect of the disease or due to other factors. If an accurate prognosis as to future industrial adaptability cannot be made, and should await future developments, such should be stated.

*d.* The member will be counseled in accordance with appendix C.

*e.* The patient will not be told—

(1) That he will be discharged or retired from the service because of physical disability.

(2) The percentage of disability.

(3) The line of duty finding, unless final approval has been obtained on such findings.

**4–8. Referral to a physical evaluation board.** *a.* The medical board will recommend referral of members who do not meet medical retention standards to a PEB, including those who apply for continuance on active duty under the provisions of chapter 6. (Members who request expeditious discharge under the provision of chap. 5 will not be referred to a PEB). Except for members previously found unfit and retained in a limited assignment duty status by the Secretary of the Army under chapter 6 of this regulation or a previous authority, a member being processed for nondisability separation will not be referred to a PEB unless he has a medical impairment or impairments which raises substantial doubt as to his ability to continue to perform the duties of his office, grade, rank, or rating.

*b.* Members may provide additional information to the MTF commander from their commanders, supervisors or other persons who have information pertinent to their case.

*c.* Administrative processing of members referred to a PEB will be accomplished in accordance with appendix E.

**4–9. Mentally incompetent and spinal cord injury patients.** AR 40–3 provides for the transfer of mentally incompetent and spinal cord injury patients to a VA medical facility after completion of medical board action. In such cases, counseling will be completed as

prescribed in appendix C and the medical board proceedings will be referred to the PEB after transfer of the patient to insure timely processing.

**4-10. Action following approval of a medical board's recommendation for PEB referral.** The unit commander will be notified of the planned referral and will advise the MTF commander in writing whether a personnel action is pending which would bar further disability processing. After initial counseling, if further action is not barred, the records listed below, as appropriate, will be forwarded to the servicing PEB as indicated at table 4-1.

*a.* Approved Medical Board Proceedings (DA Form 3947), with inclosure 1, Narrative Summary (SF 502), and inclosure 2, Report of Medical Examination (SF 88) (original and 5 copies).

*b.* All clinical and other medical records, including those received from MILPERCEN, other service hospitals, the Veterans Administration and civilian sources, if applicable. X-ray films will be retained by the medical treatment facility until requested by an adjudicative or review body when they will be forwarded without delay. However, SF 519a's will be forwarded with the clinical records.

*c.* Health Record (DD Form 722).

*d.* A reproduced copy of DA Forms 2 and 2-1 (Personnel Qualification Record, Parts I and II) for active duty personnel or DA Form 66 (Officer Qualification Record) or DA Form 20 (Enlisted Qualification Record) for Reserve Component personnel.

*e.* If the current grade is private (E-1), a statement will be included outlining circumstances which preclude advancement to the grade of private (E-2) under the provisions of AR 600-200.

*f.* Statement from the custodian of an enlisted member's records that an unfavorable action as defined by AR 600-31 is not pending. If such action is pending on a case being referred to a PEB, a statement required by paragraph 1-2*c*, *d*, or *e* will be attached.

*g.* A statement indicating whether elimination proceedings are pending against a commissioned or warrant officer, and providing the current status of such proceedings, if applicable.

*h.* Approved copy of Report of Investigation—Line of Duty and Misconduct Status (DD Form 261), or Statement of Medical Examination and Duty Status (DA Form 2173), or a copy of a message to DA requesting a Line of Duty Determination, as applicable. (When a case is considered without benefit of an advance line-of-duty determination, the commander of the MTF where the medical board is held will telegraphically (in the event of MINIMIZE, notification will be forwarded by airmail) provide HQDA (DAAG-PSC), Alexandria, VA 22332, the following information:

(1) Name, grade and SSN.

(2) Date of injury.

(3) Short summary of incident causing injury to include medical facility where initially admitted or treated.

(4) Unit of assignment of member when injured.

(5) Why a line-of-duty investigation is required.

(6) Measures taken to secure the approved line-of-duty determination to include all offices, installations or commands contacted in an effort to obtain the approved report.)

*i.* Member's request for continuance on active duty under the provisions of chapter 6, if applicable.

*j.* Statement of retention beyond ETS, if applicable. (See AR 635-100 and AR 635-200.)

*k.* When the patient is not on extended active duty, a copy of the orders which ordered him to active duty, active duty for training, or inactive duty training, and if applicable, a copy of the order rehospitalizing the patient, pursuant to paragraph 15, AR 135-200.

*l.* In mentally incompetent or deleterious type cases, a statement showing: Name, address, and relationship of next-of-kin (or

# EXHIBIT

# E

by the MTF commander to reflect the approval action and filed. (See rule 2, table 4-3, this regulation, and fig. 7-1, AR 40-3, for distribution instructions). The letter of approval will be filed in the member's unit Military Personnel Records Jacket (DA Form 201).

*b.* If the member's application for continuance on active duty is disapproved, all records will be returned promptly to the PEB which originated the case with the information copy of the disapproval action.

**6-13. PEB action upon disapproval.** When the records of a case which has been disapproved by HQDA are returned to the PEB, the president will process the case under [illegible] 4 of this regulation. Prompt processing is essential. Propriety of the disapproval action is not a matter for consideration by the PEB in their subsequent adjudication. Accordingly, appeals or rebuttals and arguments which relate to such disapprovals will not be presented before PEBs.

**6-14. Entries on medical and personnel records.** Members continued on active duty under this regulation will have records annotated as prescribed below to insure proper identification, assignment, and/or retention on duties which they are physically qualified to perform.

*a.* Members who are found medically unfit because they do not meet retention medical fitness standards will have medical records coded with a "4" profile, code V with specific limitations indicated. This limiting profile is normally assigned at the MTF.

*b.* The MTF will sometimes refer a member as questionably medically unfit with two or more "3's" in the physical profile to a PEB because of two or more disabilities which individually are not unfitting but combine to make him unfit. When this occurs, the PEB medical officer will enter a "4" in the P factor of the serial, or under one of the other factors if appropriate, in item 76, SF 88 (Report of Medical Examination). The PEB medical officer is designated a profiling officer for the purpose of implementing this requirement.

*c.* Entries pertaining to physical profile status and assignment limitations will be made on DA Forms 2 and 2-1 (Personnel Qualification Record). A brief non-technical description of the defect will be recorded, together with the specific assignment limitation.

**6-15. Utilization.** Members approved for continuance on active duty under this regulation will be utilized in any element of the Army in the specialized fields for which they are qualified and in which they can perform duty effectively within their specific limitations.

*a.* When indicated, retraining will be accomplished prior to assignment. Members who are qualified for MOS training in any Army service school course for which a quota exists, may be ordered to the appropriate school for such training. If additional training is necessary in an MOS for which no school quota exists, the member will be ordered to on-the-job training at the installation to which assigned.

*b.* Members continued on active duty under this regulation will be utilized in worldwide duty assignments or training commensurate with their capabilities and physical limitations as prescribed by chapter 9, AR 40-501. When the approved medical board proceedings contain a specific recommendation that a member who has been fitted with an artificial eye or limb be stationed within a reasonable distance of a MTF capable of servicing the prosthesis, an assignment limitation to this effect may be imposed for a period not to exceed 1 year from the date of approval of the application.

**6-16. Disposition of members unable to perform duty.** Any member continued on active duty under the provisions of this regulation who is subsequently found to be unable to perform effectively the duties to which assigned, because of physical disability, will be referred to a MTF for reevaluation and appropriate disposition through the physical disability evaluation system.

**6-17. Reevaluation and reenlistment.** *a.* An

enlisted member continued on active duty under the provisions of this regulation who desires to reenlist upon termination of his present enlistment or expiration of the period for which continuance was approved will request a waiver of his unfitting condition for reenlistment. The request will be submitted on DA Form 3072, accompanied by a current Medical Board Proceedings (DA Form 3947, SF 502 and SF 88) recommending whether reenlistment should be accomplished as prescribed in line 3, table 3-1, AR 601-280, to the Commander Enlisted Eligibility Activity, 9700 Page BLVD., St. Louis MO 63132, who will approve or disapprove reenlistment. PEB consideration is not required. Such requests will be submitted between four and six months prior to expiration of term of enlistment or period for which continuance was authorized or as directed by HQDA. Examinations accomplished for this purpose may substitute for other scheduled periodic physical examination.

*b.* If reenlistment is disa[illegible]roved the enlisted member will be referr[illegible] to a MTF for disposition through the ph[illegible]ical disability evaluation system.

**6-18. Reevaluation on termination of waiver by HQDA.** Any member continued on active duty, under the provisions of this regulation whose waiver is terminated by HQDA will be referred to a MTF for reevaluation and appropriate disposition through the physical disability evaluation system.

**6-19. Duty during processing.** Members being processed under this regulation may be placed on special duty as provided in AR 40-3, if assigned to the medical holding unit. If the member is attached to the medical holding unit, he may be returned to duty status with appropriate assignment limitations. These actions will be taken following PEB proceedings while awaiting action by HQDA.

# EXHIBIT

# F

# APPENDIX C

# COUNSELING

## Section I. GENERAL

**1. Purpose.** To outline the responsibilities and duties of the PEBLO and, as indicated, the PEB Legal Counsel, and to provide a guide for counseling members being processed through the physical disability system.

**2. Scope.** Each member (next-of-kin or legal guardian in deleterious type cases or when the member is mentally incompetent) will be counseled by the PEBLO throughout the course of physical disability processing. In cases where the member is unable to converse verbally, the member and his next-of-kin or legal guardian, if available, will be counseled jointly. Counseling will be based on the circumstances of the case, and designed to serve the member's best interests. Members who are under treatment for conditions which may result in disability separation or retirement often are most concerned over their eventual disposition. They will often have questions about medical board and PEB procedures, what the possibilities are for remaining on active duty in spite of their disabilities and similar questions, the answers to which are frequently not readily available at the moment. Such questions should be answered so far as available information permits. Generally the answer to such a question will be to describe procedures used in handling disability cases. In these circumstances, members will be reassured that they will be counseled from time to time as their cases progress and should be encouraged to ask questions whenever they wish.

**3. Stages of Counseling.** Counseling will be provided at the following stages of the physical evaluation process:

*a.* When the attending medical officer managing a patient determines that the member's case will be referred to a medical board. At this stage, a member may frequently have questions and problems which require advice by the PEBLO. If appropriate, action should be taken to obtain documents from the member's commander and/or rater reflecting his physical ability or inability to perform duty, as outlined in paragraph 4*d* below.

*b.* When the approved findings and recommendations of the medical board are made known to the member or his next-of-kin, the member will be afforded an opportunity to read the medical report and narrative summary, and instructed in how additional evidence may be presented for consideration by the medical board. When appropriate, the PEBLO will advise the member on procedures for requesting expeditious discharge under the provisions of chapter 5, or continuance on active duty under chapter 6, and the probable effects of each.

*c.* When the findings and recommendations of an informal PEB are made known to the member or his next-of-kin.

*d.* When the member's case is to be considered by a formal PEB, the PEBLO will notify the PEB Counsel of the member's demand for a formal hearing, and during this stage, the PEB Counsel is responsible for counseling the member.

*e.* When the findings and recommendations of a formal PEB are announced.

*f.* When the Commander, USAPDA, informs the member or his next-of-kin of a proposed modification to the findings and recommendations of the PEB.

*g*. When the results of the APDAB's consideration of his appeal are made known to the member or his next-of-kin.

**4. PEBLO.** The PEBLO, in executing his responsibilities, must:

*a*. Have a thorough knowledge of the policies, operating regulations and directives which apply to the physical disability evaluation system. To be of assistance, section II contains guidance for counseling purposes.

*b*. Include each of the matters outlined below in relation to the findings and recommendations of the adjudicative elements of the disability evaluation system, even though the scope of counseling may vary with the circumstances of the member's case.

(1) *Legal rights*. The member will be advised that no member of the Army may be retired or separated for physical disability without a full and fair hearing. If the member is a Reservist, he will be advised that he has the right to at least one reserve voting member on a PEB panel, if available, unless he waives that right. Signature of the member on DA Form 199 signifies waiver of this right, if applicable. When the member indicates dissatisfaction with the findings and recommendations, or at any time requests advice as to the proper course of action, he will be informed of the legal and factual issues, and the merits of the case. He will also be provided required assistance in the preparation and submission of written comments on, and/or rebuttals to, the findings and recommendations.

(2) *Findings and recommendations*. Each of the findings and recommendations will be explained in language understandable to the member, together with the effect the recommended disposition will have on his status.

(3) *Pay*. With the assistance of the local finance officer, an estimate will be furnished the member of the retired or severance pay which he may receive under the several formulas which may be utilized. With the advice of a legal assistance officer, as required, the member will be informed of the income tax exemptions which may be applicable. He will also be reminded that any election he has made under the Survivor Benefit Plan may result in a deduction from retired pay.

(4) *Grade determination*. The member will be notified that the grade in which he will be retired will be based on the provisions of sections 1372 and 1373, title 10, US Code, and that determination of the highest grade satisfactorily held will be made by the Secretary of the Army.

(5) *Veterans Administration*.

(*a*) Whenever possible, arrangements should be made for a member being retired or separated because of physical disability to have a personal interview with the Veterans Administration representative serving the MTF or installation concerning the member's entitlement to VA benefits. If for any reason this is not feasible, the member will be counseled in accordance with (*b*) below.

(*b*) The member will be advised of his right to apply to the Veterans Administration for disability benefits before separation, or subsequent thereto, or not at all, as he elects. Notwithstanding an election to the contrary, however, he should be strongly urged to file a claim before separation whether or not he finally decides to avail himself of the VA benefits. It must be pointed out that greater benefits may be available from the VA and, although there is no assurance that VA benefits will be greater, the member is not bound in any case to accept them. All members should be especially urged to initiate a claim with the Veterans Administration, for the likelihood that the VA benefits may be greater is often substantial, depending on the member's grade, severity of the disability, and his dependency status. The member will be shown how disability compensation paid by the VA relates to retired or severance pay. Other potential benefits such as postservice life insurance, survivor benefits, medical care and hospitalization will be pointed out. However, it will be emphasized in all cases that the VA makes its own determinations with respect to entitlements and administration of rights and benefits arising out of laws it administers, and that the VA is not bound by determinations made by the Army.

(6) *So il security.* The PEBLO will maintain close liaison with managers of social security district offices to insure that members who are being processed through the disability system, or those for whom processing is contemplated, are properly advised of the social security laws and regulations. When a person may be eligible for social security benefits, the PEBLO will assist the member in preparing DA Form 2783-R (AR 608-13) to insure contact is established between the member and the social security agency.

(7) *Temporary Disability Retired List.* If placement of the member on the Temporary Disability Retired List (TDRL) has been recommended, he will be advised of the effects of such disposition. He (or his next-of-kin) will be counseled that he must undergo periodic medical evaluation when so directed, or forfeit his right to retired pay. He will be informed that he must notify HQDA (DAPC-PAS-RD), 200 Stovall Street, Alexandria, VA 22332, of any change in residence. He will be informed that the maximum time he may be retained on the TDRL is 5 years, but that final disposition may be made at an earlier date whenever a periodic examination discloses that his condition has sufficiently stabilized. He will be informed that changes in the degree of severity of his disability will not affect his retired pay while he is on the TDRL, but that his final disposition may result in permanent retirement with the same, a greater, or lesser percentage of disability; separation with or without severance pay; or an opportunity to be reappointed or reenlisted. If he is a Reservist, the member will be informed that reappointment or reenlistment will not necessarily be followed by a recall to active duty.

(8) *Review Procedures.* Every member will be informed of the review procedures that take place. He will be apprised of the fact that the Commander, USAPDA, and the Army Physical Disability Appeal Board (if the case is referred to it) are authorized to recommend changes or modifications of PEB findings and recommendations, and advised of the rights and elections available to him in such event.

*c.* Assist th membe n obtaining answers to questions which may arise, in such a manner as to clarify and resolve problems related to disability evaluation.

*d.* Counsel the member on the advisability of obtaining documents such as letters, supervisor evaluations, or efficiency reports reflecting physical ability or inability to perform military duties. If the member desires to obtain such documents, the PEBLO will assist in identifying and obtaining them. The MTF commander will insure that they are attached to the case file as supporting evidence.

(1) Special letter of evaluation describing the member's most recent performance of duty prepared by the member's commander or rater, or both. The letter should emphasize the member's limited duty assignment and ability or inability to perform duties normally expected of an individual in the member's office, grade, rank, or rating, including factors such as current duty assignment, anticipated duty assignments, branch, age and career specialties.

(2) Copies of applicable efficiency reports for officer personnel may be obtained from the Records Branch, HQDA (DAPC-PAR), 200 Stovall Street, Alexandria, VA 22332, and for enlisted personnel from the US Army Enlited Records Center, Fort Benjamin Harrison, IN 46249.

(3) The member may obtain other documentation such as letters or statements from knowledgeable individuals, as desired. An efficiency report prepared by his current rater reflecting performance of duty since the last required rating may be significant.

(4) In TDRL re-evaluations, the PEBLO will ascertain whether the member has been treated by a VA hospital, other military hospital, civilian hospital or a physician since his last medical evaluation. If the member indicates he was seen recently for a service-connected disability, the PEBLO will make every effort, with the assistance of the member, to obtain copies of such records of treatment and evaluation.

*e.* Maintain close coordination with the physical evluation board in the processing of

cases, and on all other matters affecting the efficient and expeditious handling of disability evaluation cases.

*f.* Provide coun ing and assistance to TDRL members u rgoing periodic examinations and relate valuations.

## Section II. COUNSELING GUIDE

**5. General.** In addition to this regulation, several other references are frequently applicable and should be available to the PEBLO for counseling purposes. As a minimum, the following should be available:

*a.* AR 37-104-1 series.

*b.* AR 40-3 (Medical, Dental and Veterinary Care

-501 (Standards of Medical Fitness).

*d.* AR 600-33 (Line of Duty Investigations).

*e.* AR 608-13 (Social Security Disability Benefits).

*f.* DA Pam 600-5 (Handbook on Retirement Services).

*g.* DA Pam 608-2 (Your Personal Affairs).

*h.* Veterans Administration Schedule for Rating Disabilities.

*i.* Physicians Guide: Disability Evaluation Examinations; Department of Medicine and Surgery, Veterans Administration.

**6. Rights of Member.** No member may be separated from the Army because of disability without a full and fair hearing. His rights are enumerated below:

*a. Medical Board.* (This board can find a member not qualified for retention and refer him to a PEB. Recommendations of the Medical Board are not binding on the PEB.)

(1) Right to disagree with Medical Board findings and appeal.

(2) Right to PEBLO assistance following Medical Board and during subsequent disability evaluation, to include where advisable, assistance in obtaining documents such as letters, supervisors evaluations, or efficiency reports reflecting physical ability or inability to perform duties.

*b. Physical Evaluation Board—Informal.* (The member does not appear or participate in an informal PEB hearing.)

(1) Right to be advised by PEBLO about findings of the informal PEB, to include an explanation of all rights and elections, and clarification of effects and benefits.

(2) Right to 3 working days in which to decide whether or not to accept PEB findings.

(3) Right to a formal hearing—discuss composition of formal panel—that the board members may be the same as those who made the informal finding consider what the member may wish to present to the PEB. Emphasize that new or additional material must generally be presented to have an information finding changed.

*c. Physical Evaluation Board—Formal.*

(1) Right to appear personally before the PEB.

(2) Right to be represented by an appointed JAGC OFFICER (lawyer), a JAGC officer of his choice if reasonably available, or by a civilian attorney at no expense to the Government, or by a representative (counselor) of an accredited veterans service organization.

(3) Right to cross-examine any witnesses ...ed by the board or to call witnesses in his own behalf.

(4) Right to have excluded any statement signed by the member against his interest concering the origin, incurrence, or aggravation of a disease or injury that he has.

(5) Right to obtain a statement of the case (explaining or clarifying otherwise unclear rationale for PEB's findings and recommendations) following a formal hearing.

(6) Right to submit a written rebuttal to the findings of a formal PEB.

*d. The US Army Physical Disability Agency.* This agency reviews all PEB cases

and where there is a reduction in the percentage of disability, a change of disposition, or any change which may affect the member adversely the following rights apply:

(1) Right to be informed of the proposed modification and the reasons therefor.

(2) Right to a formal PEB hearing (if the member has not already had one) with rights as outlined in subparagraph *c* above.

(3) Right, in every case, to submit a rebuttal to modified findings of Cmdr, USAPDA.

(4) Right to be counseled by PEBLO (or PEB counsel in formal case) as to the meaning and effect of the proposed change.

(5) Right to be assisted by the PEBLO (or PEB counsel in formal cases) in preparing his rebuttal if the member elects to submit one.

*c. US Army Physical Disability Appeal Board.* This board reviews cases where the member has elected to rebut a proposed modification and the Cmdr, USAPDA did not agree with the rebuttal. If the USAPDAB arrives at findings and recommendations different from either the PEB or USAPDA, the member has the right to:

(1) Be informed of the revised findings of the USAPDAB.

(2) Submit a rebuttal to the findings.

(3) Counseling on the meaning and effect of these new findings.

(4) The assistance of the PEBLO or PEB counsel in preparing his rebuttal if he elects to submit one. (Rebuttals are sent to the Appeal Board for reconsideration.)

**7. PEB Findings and Recommendations.** *a.* The PEB must make findings, based on medical records, the medical board, and all other relevant evidence such as evalution of performance of duty, as to the following:

(1) Whether the member is unfit.

(2) If unfit whether the disability causing unfitness was incurred while entitled to basic pay and in line of duty. Members ordered to active duty for 30 days or less or inactive duty for training must have an unfitting disability resulting from an injury incurred under proper conditions.

(3) Percentage of disabil ; if the member is otherwise qualified.

(4) Whether the membe retirement was based on disability (1) resu ng from injury or disease received in line of duty as a direct result of armed conflict, or (2) caused by an instrumentality of war and incurred in line of duty in a period of war.

*b.* Main guidelines for explaining each disability percentage (VA Schedule for Rating Disabilities).

(1) Guidance in interpreting VASRD found in appendix B, AR 635–40.

(2) Method for computing the combined rating for more than one disability is not simple addition but by a mathematical formula (para 11, sec 1, app B).

(3) There are often various means of rating a disability, for example, a joint injury may involve nerve or muscle damage and limitation of motion. Check each to ensure the member has been rated the most advantageous way; however, attention should be given the amputation rule (para 68, app B, AR 635–40) and the prohibition of pyramiding (para 4, sec I, app B, AR 635–40).

*c.* Retirement or separation determined by percent of disability or years of service.

(1) Combined rating at 30 percent or more, member is either placed on TDRL or permanently retired; if member has been retired once and then recalled, he will revert to retired status when released from active duty and may be entitled to recomputation of retired pay.

(2) Combined rating less than 30 percent, member separated from the service with severance pay unless he has over 20 years' service in which case he would be retired. (See tables 4–3, 4–4 and 4–5.)

*d.* Rights available *only* to retired members (TDRL or permanent)—Explain this to all members, same rights and privileges as those for members retired for years of service, some of which are:

(1) Right to PX and commissary privileges for member, wife and children, if children are not too old and other similar military benefits as appropriate.

(2) Right, generally, to medical care for himself and his dependents as reasonably available at any service installation.

(3) Right to participate in CHAMPUS—basically a health policy where the Army pays up to 75 percent of "reasonable" hospital expenses for inpatient care, and 75 percent of outpatient care per fiscal year after the first $50 dollars per person or $100 dollars per family spent by member. (See DA Pam 360-505, "Uniform Services Health Benefits Program.")

(4) Right to receive treatment at VA hospital.

(5) Possession of valid identification card (DD Form 2-A Gray for retiree and DD form 1173 for dependents) is all that is needed for most privileges.

**8. Temporary Disability Retired List.** *a.* Minimum payment is 50 percent of basic pay even if disability percentage is less than that.

*b.* Periodic examinations required at least every 18 months. Member receives orders telling him when and where to report.

(1) If member does not respond, his Army retired pay may be stopped.

(2) If an emergency comes up and the member is unable to meet date assigned, then contact the MTF commander who will arrange a new examination date and obtain new orders if necessary.

(3) Each periodic examination report is referred to a PEB for determination as to whether the member is to be retained on or removed from the TDRL.

*c.* Maximum TDRL period—5 years.

(1) In no case will a member be removed from the TDRL without another PEB.

(2) No changes will be made in the percentage of disability while on the TDRL even if it gets materially better or worse, without procedure as outlined above.

(3) Retired pay will be stopped if final action is not completed within 5 years.

*d.* Finding of Fit for Duty upon completion of TDRL.

(1) Disability pay .ops.

(2) Member may ( ct to return to AD (or former Reserve statu or be discharged.

(3) If the membe. elects AD, time spent on TDRL will count for pay purposes.

(4) If the member does not elect AD, the finding of fit does not necessarily affect his standing with VA or his entitlement to VA compensation.

**9. Pay and Grade.** *a.* Pay computation is based on highest grade "satisfactorily" held *OR* current grade, whichever is higher. Final grade determination is made by DA.

*b.* Computation of pay for those with less than 20 years active service and a disability percentage less than 30 percent (Separation with severance)—2 months base pay for every year of active duty with a maximum of 12 years service—6 months or more is considered as a whole year for computing years of service as a multiplier, but does not increase basic pay rate. A member with less than six months service cannot receive severance pay, but may apply to the VA for disability compensation.

*c.* Computation of pay for members with a disability rating of 30% or with 20 or more years active service.

(*Note:* 19 years and 6 months is *not* considered 20 years of active service.)

(1) Compute either on percent of disability as a fraction of basic pay, *OR*, as 2½ percent of basic pay for each year of service, whichever is higher.

(2) All pay computed on disability percentage is tax free.

(3) In no case may pay exceed 75 percent of basic pay.

(4) If the member would receive a greater percentage of basic pay on years of service, the portion equal to the amount he would receive due to disability percentage is tax free. *Example:* Member with 24 years service and disability rating of 30 percent can receive 60 percent of base on years of service (24 × 2½) with the amount equal to 30 percent of his basic pay tax free as disability pay.

(5) A member may also use the "Sick Pay Exclusion" (See DA Pam 600-5, "Retired Army Personnel Handbook," for details) if his retirement pay on years of service exceeds the tax benefit on disability percentage. This exclusion is not provided for on the W-2 Form, but must be claimed in the member's tax return. This exclusion has a time limit dependent on rank and/or years of service.

*d.* Tax benefits for members with less than 50 percent disability and TDRL are as follows:

(1) If the member has less than 20 years all pay is tax free.

(2) If the member has 20 years or more active service, only the amount equal to his disability percentage is tax free.

*e.* Retired members are automatically covered under the Survivor Benefit Plan (SBP) unless they elect not to participate.

*f.* Regular Army officers may come within the limitations of "dual compensation" if they come back to work for the Federal Government unless they have a disability declared a direct result of armed conflict or instrumentality of war.

*g.* Special benefits accrue if disability is direct result of armed conflict or instrumentality of war, and member seeks Federal employment—

(1) Preference employee.

(2) Leave credit at highest rate.

**10. Veterans Administration.** The VA's program for disability benefits is based on VA's own determination. Some examples of the VA's program currently are as follows:

*a.* Member may receive benefits from both VA and the Army, but not more than the higher amount of the two; i.e., if he were to get $300 per month from VA and $150 monthly from the Army, he could take a combination not exceeding $300 per month. (The same is true with severance pay in that if he were to get $500 severance pay from the Army and $50 monthly from VA, he could not collect from VA until the $500 had been recovered.)

*b.* The member loses no rights from either the VA or the Army by taking pay from one rather than the other.

*c.* If retired, the member may switch back and forth from the Army to VA in order to secure maximum benefits. (VA representative will assist in this.)

*d.* No matter how the member is separated, he should always file a claim with VA.

*e.* Contact a VA representative for information concerning other available benefits. If no VA representative is available, the following should be explained to the member:

(1) *Example 1:* A PFC, married, with 50 percent disability rating from both the Army and VA, would be able to receive about $188 from the Army (less than 2 years service); VA would pay $149 plus $16 for wife, making Army retired pay more advantageous.

(2) *Example 2:* A SFC (E-7), married, with 50 percent disability rating from the Army and VA, would be able to receive about $343 from the Army (over 10 years service): VA would pay $149 plus $16 for wife, as above, making Army retired pay more advantageous.

*f.* VA has an excellent rehabilitation program under which tuition, fees and books are paid for by VA plus a monthly subsistence sum, for certain qualified members.

*g.* VA offers a life insurance program whereby a member who does not already have NSLI (National Service Life Insurance) can obtain up to $10,000 insurance at low rates in addition to his current convertible SGLI (Serviceman's Group Life Insurance).

*h.* None of the VA benefits are automatic; the Veteran must apply and do so before expiration of the appropriate time limit in which to qualify.

**11. Social Security.** *a.* Members who become disabled may be entitled to social security benefits if qualified.

*b.* Every member should file a claim if there is any possibility of collection since social security is payable in addition to, and





thout deduction from Army or VA disability compensation.

e. PEB Liaison Officers are directed by paragraph 9, AR 608-13 to establish liaison with social security officers, supply information concerning social security, and to counsel patients about the social security disability program.

**12. Counseling Procedure and Checklist for Medical Boards.** *a.* Review and become familiar with the findings of the medical board.

(1) Be sure that the medical terminology can be explained in terms that the member can understand.

(2) Check all entries on the DA Form 3947 for completeness.

*b.* Promptly contact the member and make arrangements to discuss the findings.

(1) Give the member an opportunity to read the medical board report and the narrative summary.

(2) Inquire whether all medical conditions and physical defects appear and that they have been described adequately. If not, consider submitting an appeal, or contacting physician as to possibly obtaining an addendum.

(3) Inform the member of the procedures for requesting expeditious discharge (chap. 5) or continuance on active duty (chap. 6).

*c.* When the member indicates he wishes to appeal the findings of the medical board:

(1) Explain how additional evidence may be presented for consideration by the medical board.

(2) Explain the options of the appointing authority which are to approve the findings and recommendations, or return the proceedings to the medical board for reconsideration.

(3) Have the member sign the medical board indicating whether or not he desires to appeal.

(4) Assist in writing an appeal, if desired by the member and furnish clerical assistance.

*d.* Outline generally the course of physical disability processing through the Physical Evaluation Board and the US Army Physical Disability Agency.

(1) Inform the member that he will be contacted when the PEB makes an informal finding and will be advised concerning the PEB's recommendations.

(2) Furnish the member with a copy of all pertinent publications which may answer many of his questions; however, if they do not, he should come back.

*e.* Suggest that he sees a VA representative to find out what benefits are available from the Veterans Administration.

*f.* DO NOT INFORM THE MEMBER:

(1) That he has been found physically fit or unfit.

(2) That he will be discharged or retired from the service.

(3) What percentage of disability he may receive.

(4) Of the line of duty determination unless a final, approved LOD determination is available.

**13. Counseling Procedure and Checklist for Findings of the PEB.** *a.* Review and become familiar with the findings and recommendations of the PEB.

(1) Compare PEB findings with the member's medical board, the VASRD and appendix B. (If the member had been found fit, consult chap. 3, AR 40-501 and chap. 4, AR 635-40). Check that PEB has not overlooked any condition which may substantially alter the member's benefits.

(2) Compute and prepare an estimate of retirement or severance pay, tax benefits, and VA compensation. Consider length of service, sick pay exclusion and other benefits. See disability Counseling Worksheet, figure C-1.

*b.* Contact the member and make arrangements to discuss the findings.

(1) Inform the member of the findings and the benefits which accrue in his case (using the prepared estimates) and his possible courses of action.

EXHIBIT

6

# APPENDIX E

## PERSONNEL PROCESSING ACTIONS

**1. General.** This appendix prescribes personnel processing actions peculiar to members undergoing physical evaluation under the provisions of this regulation.

**2. Physical evaluation.** When it is determined that a member will be processed for physical evaluation under this regulation, he will be placed under the administrative control of the commander of the medical treatment facility to the degree necessary to facilitate evaluation processing. The decision as to whether the member will be assigned to the medical holding unit of the medical treatment facility will be made on the basis of whether the individual may render productive service to his parent unit while undergo- lisability processing. Members will be processed on an outpatient basis from their parent organization whenever feasible. The MTF commander concerned is responsible for initiating all appropriate actions expeditiously which relate to disability processing, to include initiating appropriate action for necessary movement of the patient to other hospitals, as required, or to the Physical Evaluation Board, if a personal appearance of the member is to be made. See AR 135-200 concerning orders for ARNGUS and Army Reserve personnel.

**3. Individual records and property.** *a.* Personnel records of members attached to a medical holding unit will be retained in the organization to which the member is assigned. Records required by the medical treatment facility commander in conjunction with the study and evaluation of the member will be furnished the medical treatment facility on a loan basis, when requested by him.

*b.* Upon receipt of an order reassigning a member of his organization to a medical holding unit, the organization commander will forward the member's personnel and pay records to the MTF commander concerned within 48 hours.

*c.* Individual clothing of the member will be forwarded in accordance with the provisions of AR 735-5

**4. Administrative control of members prior to Final PEB action.** *a.* Members processed as outpatients. A member for whom disability processing has been initiated will remain available to the MTF commander or President of the PEB until action in his case has been completed by the PEB.

*b.* Member processed by MTFs in attached status. When referral of his case to a Physical Evaluation Board is indicated, a member attached to a medical holding unit of a MTF will normally be retained at the MTF until PEB processing is completed. He may, however, be authorized to subsist elsewhere.

*c.* Members processed by MTFs in assigned status. Following referral of a case to a Physical Evaluation Board, an assigned patient normally will remain at the MTF until PEB action is completed. He may, however, be authorized to subsist elsewhere, pending completion of PEB action.

**5. Administrative control of members after PEB action.** After PEB proceedings have been completed, the member's disposition will be in accordance with the recommended findings of the board as indicated in *a* and *b* below. The member will not be separated from the service for any reason before notification is received of the final determination in his case by the Secretary of the Army.

*a. Physically fit.* A member who is found physically fit for duty by a PEB and concurs in the finding will be processed by the medical treatment facility commander in accordance with AR 40-3. If the member does not concur with the PEB's finding of fit, or if he is being processed in connection with mandatory or voluntary retirement, he will be retained under control of the medical treatment facility commander pending final action on his case at Headquarters, Department of the Army. If he is an inpatient, he may be placed on duty within the MTF or with a nearby organization pending final action on his case. If he is an outpatient, he will remain assigned to his parent organization pending final action on his case.

*b. Physically unfit.* A member who is found unfit because of physical disability by the PEB will be retained under control of the medical treatment facility commander pending final review and approval of his case.

*c. Inpatient processing.* A member who is an inpatient in a MTF when his case was referred to a PEB may be—

(1) Retained as an inpatient at the option of the MTF commander.

(2) Placed on duty within the MTF, if assigned to the medical holding unit, to perform such duties as his condition permits. DA Form 3349 (Medical Condition-Physical Profile Record) will be furnished to the member.

(3) Authorized to subsist elsewhere pending completion of PEB action.

(4) Ordered home on a permanent change of station (PCSH) on his request if assigned to the medical holding unit, while awaiting final action on his case and further orders. The member's request for PCSH will follow the format of figure E-1. He will be carefully counseled regarding his entitlements and obligations incurred as a result of his request. All separation actions and forms will be completed, insofar as practical, prior to departure of the member on PCSH, to include final action by the PEB and the member on PEB actions.

(5) Ordered to a Veterans Administration hospital on a permanent change of station (PCSVA) as set forth in AR 40-3.

*d. Change in status.*

(1) If the member is rehospitalized before final disposition, orders will be amended to show the place and date(s) of rehospitalization, authorization for travel between his home and the MTF, and whether he is entitled to BAQ and subsistence during hospitalization. The member will not be charged leave during hospitalization and travel connected therewith. If rehospitalization is completed prior to final disposition of his case, he may again be placed on a PCSH status if he so desires.

(2) A copy of the member's request and orders directing PCSH will be furnished the PEB for attachment to the case records. If the records have already been sent to the CG, USAPDA, the PEB will send the request and orders to HQDA (DAPC-PAS-RD). If the orders are later amended as described in (1) above, a copy of each amendment will be furnished CG, MILPERCEN, at the same address without delay.

**6. Members located in oversea command.** A member assigned in an oversea command, or who is on the TDRL and residing (not visiting) in the command, will be processed as follows:

*a. Active duty.* Upon completion of the medical board proceedings by the responsible oversea MTF, the medical records and allied papers will be forwarded to the PEB prescribed in table 4-1 for evaluation. Should the member refuse to accept the findings and recommendations of the informal board and demand a formal hearing with personal appearance, the PEB conducting the informal hearing will schedule the formal board, and initiate a request to the oversea MTF commander for the member's travel orders. The member will be authorized 5 days TDY at the Physical Evaluation Board and will return immediately to his assignment overseas following his appearance before the board unless otherwise directed by proper authority.

*b. TDRL.* When a TDRL member who resides in the oversea command demands a

formal hearing and elects personal appearance, he will perform necessary travel on the orders by the PEB as prescribed in chapter 7. The member will be authorized 5 days TDY at the Physical Evaluation Board.

**7. Continuance of disabled members.** Disabled members who request continuance on active duty will be processed pursuant to chapter 6.

**8. Army members hospitalized in non-Army MTFs.** CG, Health Services Command, is responsible for the administration of Army members who are hospitalized in other than Army MTFs. This responsibility is exercised through Army administrative units at certain Federal MTFs, or through Army MTF designated by the commander of the Health Services Command to assume responsibility for such members as provided for in AR 40-3.

*a.* Unless otherwise directed by the commander concerned, the commander of an Army administrative unit at a Federal MTF will exercise the functions and responsibilities described in this regulation to insure the prompt processing of members when medical boards recommend referrals to PEB's.

*b.* In all other instances of disabled members hospitalized in non-Army MTF's, if transfer to an Army MTF is not contemplated or is contraindicated, commanders of Army MTF's designated to assume administrative control will exercise the functions and responsibilities necessary for the prompt processing of such members. If transfer of a member to an Army MTF is planned, disability processing will be deferred until the member has been moved.

*c.* Medical board proceedings prepared by Navy and Air Force MTF's on Army members in those MTF's will be used for disability processing whenever feasible. Members hospitalized in nonservice MTF's who require disability evaluation will be evaluated by medical boards appointed by Army MTF commanders having administrative responsibility for such members.

**9. Final disposition instructions.** After final determination within the Office of the Secretary of the Army, DA Orders or other disposition instructions will be forwarded to the appropriate commander for final disposition. AR 635-10 establishes procedures for processing members for retirement or discharge. The following instructions supplement those in AR 635-10 when members who are unfit because of physical disability are processed for retirement or discharge:

*a. Discharge.* Discharge will be accomplished within 3 working days after receipt of disposition instruction from CG, MILPERCEN.

*b. Retirement.* Retirement processing must be completed by the effective date established in Department of the Army orders. Retirement dates will be established as follows:

(1) *General officers.* Date of retirement will be established on an individual basis.

(2) *Individuals processed for mandatory retirement.* Date of retirement will be the date originally requested or as soon thereafter as feasible as provided in (4) below, or an earlier date if subsequently requested. A member with between 19 and 20 years of service who has applied for voluntary retirement will not be separated or placed on the TDRL prior to completion of 20 years of service, without approval of the Secretary of the Army.

(4) *All others.*

(*a*) Date of retirement will be 7 days from the date orders are issued for individuals in CONUS at home on PCSH or in a VA hospital awaiting retirement.

(*b*) Date of retirement will be 15 days from the date retirement orders are issued, or earlier upon request, for members not covered by (*a*) above who are in CONUS with home of record in CONUS.

(*c*) Date of retirement will be 30 days from the date orders are issued, or earlier upon request, for members in CONUS whose home of record is outside CONUS and for members whose home of record is in CONUS, but are stationed outside CONUS when retirement orders are issued.